**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBRA ANN GIDDINGS,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant.<br>_____ | Case No.  1:13-cv-01477-SKO<br><br>**ORDER ON PLAINTIFF'S COMPLAINT**<br><br>(Doc. No. 12) |

**INTRODUCTION**

Plaintiff Debra Ann Giddings ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Disability Insurance Benefits ("DIB") benefits pursuant to Title II of the Social Security Act. 42 U.S.C. § 405(g).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 5, 7.)

**FACTUAL BACKGROUND**

Plaintiff filed an application for DIB on February 25, 2011, alleging disability beginning on April 1, 2010, caused by diabetes with neuropathy in her feet and arms, high blood pressure, and plantar fasciitis. (AR 144.)

**A.     Relevant Medical Evidence**

In March 2010, Plaintiff was examined by podiatrist Clifford Endo for right heel pain. (AR 252-53.) Upon examination, Dr. Endo found an absence of sensation to sharpness in the toes of both of Plaintiff's feet, moderate pain to palpation of the second interspace of Plaintiff's left foot and to palpation of the plantar aspect of Plaintiff's right heel. (AR 253.) Dr. Endo also noted limited dorsiflexion of the right ankle. (AR 253.) Dr. Endo diagnosed plantar fasciitis, suspected neuroma of the second interspace of Plaintiff's left foot, diabetes with neuropathy, and autonomic neuropathy. (AR 253.) Dr. Endo administered a trigger point injection into Plaintiff's right heel and recommended orthotics.

Plaintiff was seen by her treating physician, Mark Cook, M.D., in March 2010 for acute bronchitis, allergies, lower back pain, and diabetes. (AR 235.) It was noted she had no neurological deficits, all her extremities were moving, and her gait was nonantalgic. (AR 235.) The treatment plan included a continued prescription for amylose and a low-cholesterol diet; it was recommended that Plaintiff drink fluids and return for a follow-up in 2 to 3 weeks. (AR 235.) In August 2010, she was seen again by Dr. Cook for a routine physical. (AR 232.)

In April 2010, Plaintiff was seen for follow-up care with Dr. Endo, and she reported improvement after her last heel injection but that she did not obtain much pain relief of her neuropathy. Dr. Endo administered a second trigger point injection, and advised Plaintiff to increase her ibuprofen to six tablets daily. (AR 251.)

On September 20, 2010, Plaintiff was examined by Margaret Dias, a physician's assistant ("PA Dias") at the office of Dr. Andres Arellano, a board certified internist, to establish primary care. (AR 227.) Plaintiff reported she has suffered from diabetes for 13 years, and lower-leg neuropathy for three years. (AR 227-28.) Plaintiff returned to PA Dias on December 30, 2010, complaining that the "bottoms of [her] feet [were] hurting and numb" intermittently. (AR 225.)

2

PA Dias diagnosed Plaintiff with hypertension, pre-diabetes, and bilateral foot numbness. (AR 220.) On June 1, 2011, Plaintiff again saw PA Dias and complained that, despite an increase in her prescriptions for Neurontin and Requip, her foot pain was "getting worse" and affecting her ability to stand. (AR 350.) PA Dias advised Plaintiff to lose weight and continue her medications as prescribed. (AR 350.) On December 20, 2011, PA Dias completed a Medical Source Statement regarding the functional limitations stemming from Plaintiff's idiopathic distal polyneuropathy. (AR 330-33.) PA Dias noted Plaintiff's primary symptoms included fatigue, dizziness, pain, and loss of sensation in both feet. (AR 330.) PA Dias estimated that, in a regular, eight-hour workday, Plaintiff could sit for no more than one-and-a-half hours and stand and/or walk for no more than two hours; lift and carry up to 10 pounds frequently and 20 pounds occasionally; had significant limitations in performing repetitive reaching, handling, fingering, and/or lifting; and would be capable of tolerating no more than moderate workplace stresses as they affect her nerves and exacerbate her conditions. (AR 330-33.)

On February 1, 2011, Plaintiff was examined by neurologist Jeffrey Levin, M.D., to whom Dr. Arellano had referred her. (AR 282.) She complained of pain in her right arm and elbow, and she reported a history of hypertension and type-2 diabetes. (AR 282.) On examination, Plaintiff's nerves were found to be intact, she demonstrated a positive Tinel's sign[2] in the right lateral epicondyle, and there was weakness of her wrist extension. (AR 282.) In her lower extremities, Plaintiff experienced pain during a left straight-leg raising test, she had weakness of dorsiflexion,[3] and decreased sensation at L5 distribution. Plaintiff reported a slight decrease in sensation peripherally in the lower extremities and the deep tendon reflexes. (AR 282.) Dr. Arellano found Plaintiff to have mild "stocking glove distribution neuropathy." (AR 282.) Dr. Levin reported Plaintiff ambulated without difficulty, she had no tremor or dysmetria,[4] and there was no spasticity

---

[2] A positive Tinel's sign refers to a tingling sensation felt in the distal portion of a limb upon percussion of the skin over a regenerating nerve in the limb. *Merriam-Webster Medical Dictionary*, www.merriam-webster.com.

[3] Dorsiflexion refers to flexion of the foot in an upward direction. *Merriam-Webster Medical Dictionary*, www.merriam-webster.com.

[4] Dysmetria is a condition in which there is improper estimation of distance in muscular acts, with disturbance of the power to control the range of muscular movement, often resulting in overreaching. *Dorland's Illustrated Medical Dictionary* 586 (31st. ed. 2007).

seen. (AR 282.) Dr. Levin gave an impression of right lateral epicondylitis,[5] and left L5 radiculopathy with mild polyneuropathy. (AR 282.) Plaintiff underwent an EMG, which revealed right lateral epicondylitis and left L5 radiculopathy. Dr. Levin referred Plaintiff for a magnetic resonance imaging scan ("MRI") of her lumbosacral spine. (AR 282.)

On March 1, 2011, Plaintiff was again examined by Dr. Levin. (AR 281.) He reviewed the MRI of her lumbosacral spine, and noted disc disease at L5-S1 – impinging on the S1 nerve root, worse on the right. (AR 281.) Dr. Levin also noted a "mild degree of spondylosis,"[6] and opined Plaintiff would benefit from physical therapy or aquatic therapy. (AR 281.)

On April 29, 2011, Walter W. Bell, M.D., a state agency non-examining physician, reviewed Plaintiff's medical record and provided an opinion as to Plaintiff's capacity to work based on medical records from Drs. Cook, Arellano, and Levin. (AR 268-75.) Dr. Bell found Plaintiff's records indicated neuropathy in her feet and arms, with moderate pain. *Id.* Dr. Bell reported Plaintiff had no effusions, was positive for a Tinel's sign in her right hand, had some weakness in her wrist, experienced some decreased sensation in her lower extremities and deep tendon reflexes, and MRI findings showed spondylosis. (AR 270.) Dr. Bell opined Plaintiff was limited to light work, finding this limitation consistent with her examination findings, Plaintiff's light household activities, and the MRI results. (AR 268-75.)

On May 18, 2011, Plaintiff followed-up with Dr. Levin. (AR 280.) He reported that Plaintiff's medication had been adjusted, and that Plaintiff complained of tingling on the top of her feet at night and sometimes when she walked – worse in her right foot. (AR 280.) On examination, Dr. Levin found Plaintiff had weakness of dorsiflexion and plantar flexion in her left leg, and she had an absence of deep tendon reflexes peripherally and 1+ proximally. (AR 280.) Based on this examination, Dr. Levin reported the following impressions: lumbar radiculopathy, most prominent at L5; right lateral epicondylitis; peripheral neuropathy, restless legs syndrome, and "probably" obstructive sleep apnea with insomnia. (AR 280.) He referred Plaintiff for a

---

[5] Epicondylitis is also referred to as "tennis elbow." *Dorland's Illustrated Medical Dictionary* 637 (31st. ed. 2007).

[6] Spondylosis refers to degenerative spinal changes. *Dorland's Illustrated Medical Dictionary* 1780 (31st. ed. 2007).

formal sleep study, increased her prescriptions for Neurontin and Requip, and reported planning to see Plaintiff after her formal sleep study was completed. (AR 280.)

On July 7, 2011, R. Paxton, M.D., reviewed Plaintiff's medical records affirming Dr. Bell's assessment.[7] (AR 287-90.) Also on July 11, 2011, Roger Fast, M.D., reviewed the records affirming Dr. Bell's assessment and opinion, noting Plaintiff's normal examination finding and Dr. Levin's finding that Plaintiff had a normal gait. (AR 289.)

On September 12, 2011, Plaintiff was seen at the University of California, San Francisco Medical Center, Department of Neurology ("UCSF Medical Center") upon referral by Dr. Arellano for further evaluation of dysesthesias[8] in her legs. (AR 318.) She was examined by Jeffrey Ralph, M.D., and reported a 2-year history of pain in her legs, as well as plantar fasciitis. (AR 318.) Shortly after developing plantar fasciitis, she developed numbness in the toes of both feet, and experienced occasional paresthesias in her feet. (AR 318.) Upon examination, Dr. Ralph noted what he described as normal or unremarkable findings. (AR 319.) He found her clinical presentation and examination to be consistent with a distal polyneuropathy, which was generally caused by medical problems such as vitamin deficiencies, toxin exposures, as well as genetic causes – but, in her case, diabetes carried a significant risk of developing polyneuropathy. (AR 319.) Dr. Ralph suggested additional blood tests and she was to contact him after these tests were completed. (AR 320.)

On November 14, 2011, Plaintiff was seen by Dr. Ralph for a follow-up appointment, and he determined all the blood tests performed in September 2011 showed normal results. (AR 316.) Dr. Ralph concluded Plaintiff's neuropathic pain had not been treated adequately, and his plan was to transition Plaintiff to a different kind of prescription treatment. (AR 317.)

---

[7] Dr. Paxton's specialty is noted to be psychiatry. (AR 290.)

[8] Dysesthesia refers to the distortion of a sense, particularly that of touch. *Dorland's Illustrated Medical Dictionary* 584 (31st. ed. 2007).

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application initially and again on reconsideration; consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 64-68, 83-84.) A hearing was held on January 17, 2012, before ALJ Trevor Skarda. (AR 18-28.)

**1.     The ALJ's Decision**

On January 24, 2012, the ALJ issued a decision, finding Plaintiff not disabled since April 1, 2010. (AR 18-28.) Specifically, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since her alleged onset date of April 1, 2010 (AR 20); (2) had the following severe impairments: distal neuropathy; epicondylitis; diabetes mellitus; degenerative disc disease with radiculopathy; and obesity (AR 20); (3) did not have an impairment or combination of impairments that met or medically equaled of the of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1  (AR 22); (4) had the residual functional capacity ("RFC") to perform medium a reduced range of light work as defined in 20 C.F.R. § 404.1567(b) (AR 19). The ALJ found that Plaintiff could "lift and/or carry 20 pounds occasionally and 10 pounds frequently; [Plaintiff] can stand and/or walk about 2 hour in an 8-hour workday; she can sit for about 6 hours in an 8-hour workday; she would need a sit/stand option that would allow her to sit or stand at will and still be able to continue working; she can occasionally climb ramps and stairs; she can never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel, crouch or crawl; she is limited to frequent handling and fingering with her right, dominant, hand; and she must avoid concentrated exposure to excessive vibrations." (AR 22.) The ALJ determined Plaintiff was unable to perform any of her past relevant work, but that Plaintiff retained the ability to perform other work such as receptionist (1991 WL 672192), telemarketer (1991 WL 672624), and appointment clerk (1991 WL 672185). (AR 26-27.) The ALJ concluded that Plaintiff was not disabled, as defined by the Social Security Act, at any time from April 1, 2010, through January 24, 2012. (AR 27.)

### 2. Appeals Council Denied Review and Incorporated New Evidence into the Administrative Record

Plaintiff sought review of the ALJ's decision with the Appeals Council on February 24, 2012. (AR 13). Along with her request for review, Plaintiff submitted new evidence including medical records from Dr. Ralph dated September 19, 2011, to November 5, 2012; records from Dr. Levin dated February 1, 2011, to August 22, 2012; and a narrative report dated August 22, 2012. (AR 2.) In considering Plaintiff's request, the Appeals Council noted the ALJ had decided Plaintiff's case on January 24, 2012, and determined that the new medical evidence submitted by Plaintiff was "about a later time. Therefore, it does not affect the decision about whether [Plaintiff] was disabled beginning or before January 24, 2012." (AR 2.) The Appeals Council incorporated additional exhibits into the record: Plaintiff's brief to the Appeals Council dated July 19, 2012, and a questionnaire completed by Jeffrey Ralph dated September 30, 2012, as well as a letter from Dr. Arellano. (AR 5.)

The Appeals Council denied Plaintiff's request for review on July 18, 2013. (AR 1-6). Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

**C.   Plaintiff's Arguments on Appeal**

On September 12, 2013, Plaintiff filed a complaint before this Court seeking review of the ALJ's decisions. Plaintiff argues the ALJ failed to develop the record and that the Appeals Council erred by not incorporating all the additional evidence Plaintiff submitted which undercuts the ALJ's decision.

### SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See*

7

*Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

## APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that

1 meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id.* §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id.* §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id.* §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## DISCUSSION

**A.   The ALJ Adequately Developed the Record and Permissibly Relied on the Opinions of Non-Examining State Agency Physicians**

Plaintiff argues the ALJ did not adequately develop the record in failing to contact her treating physicians Drs. Levin and Ralph. Both are specialists in the field of neurology and have treated Plaintiff for her polyneuropathy and lumbar radiculopathy since 2011. The only opinions as to the degree of Plaintiff's functional limitations were from non-examining physicians. Plaintiff asserts those opinions are of little value because they were rendered without examinations, and the opinions are stale or out-of-date because they were garnered right after Plaintiff submitted her claim. Plaintiff notes she was receiving ongoing treatment for her polyneuropathy and lumbar pain, which these non-examining physicians did not review. Because the ALJ did not obtain a compensation examination, and because the non-examining physicians' opinions are out-of-date and stale as well as unsupported by any other evidence, the opinions of the non-examining state agency physicians do not constitute substantial evidence. Plaintiff maintains the ALJ was required to develop the record by contacting Plaintiff's treating physicians to provide a functional assessment in light of Plaintiff's conditions and their treatment of her.

The Commissioner argues that, despite the lack of opinion evidence from a treating physician regarding Plaintiff's functional limitations, the ALJ thoroughly reviewed the medical record which included the neurological records from Plaintiff's treating physicians. According to

9

the Commissioner, the ALJ carefully analyzed the evidence which showed conservative treatment, mild medical findings, several lapses in treatment, and largely normal physical findings. These findings are the type of independent evidence that supported the opinions of the non-examining physicians, and thus those opinions constitute substantial evidence. Moreover, Plaintiff was represented by counsel at the hearing before the ALJ and when asked at the hearing whether the record could be closed, Plaintiff agreed. Plaintiff never requested development of further evidence such as contacting Plaintiff's treating physicians or obtaining a compensation examination to assess her functional limitations. For this reason, the Commissioner asserts Plaintiff's post-decision argument that the record should have been more fully developed is disingenuous.

The ALJ "always has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (internal citation and quotation marks omitted). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2006).

Here, the question is whether the ALJ was entitled to rely upon the opinions of the non-examining physicians' opinions. Dr. Bell reviewed Plaintiff's medical records on April 29, 2011, which consisted of medical records obtained from Drs. Cook, Arellano, and Levin. Dr. Levin had also referred Plaintiff for an MRI and EMG studies, and the findings of those tests were also reviewed by Dr. Bell. (AR 269-70.) Plaintiff saw Dr. Levin again in May 2011, and Dr. Fast reviewed those additional records in July 2011 before affirming Dr. Bell's April 2011 assessment. (AR 287-90; 289.) After Dr. Fast's July 2011 opinion, Plaintiff was referred to UCSF Medical Center in September 2011. The UCSF Medical Center clinical findings were discussed by the ALJ who noted they were normal; the ALJ also discussed that, although Dr. Ralph indicated Plaintiff's neuropathic pain had not been adequately treated, his treatment plan was limited to an adjustment of Plaintiff's medication. (AR 24.) Additionally, PA Dias completed a medical source statement in December 2011 which was given minimal weight by the ALJ as unsupported by findings and inconsistent with other medical evidence. (*See* AR 25.) Other than the normal

findings Dr. Ralph assessed in September and November 2011, and the opinion of PA Dias, the non-examining physicians reviewed the findings from Plaintiff's treating physicians. Plaintiff offers no evidence or argument that additional medical findings were made after the opinions of Drs. Bell and Fast, rendering those opinions either ambiguous or out-of-date. In affirming the opinion of Dr. Bell, Dr. Fast noted that he considered whether Plaintiff's ability to stand or walk should be limited, but several observers including her neurologist stated she had a normal gait. (AR 289.) Dr. Fast also reviewed the March 2011 MRI findings and Dr. Levin's treating records from March and May 2011 (AR 288-89). Although none of the reviewing physicians had access to Dr. Ralph's September and November 2011 examination findings, Plaintiff does not state what clinical findings or medical evidence in Dr. Ralph's September and November 2011 treatment notes are inconsistent with the non-examining physicians' opinions of Plaintiff's functional capacity or Dr. Ralph's findings rendering Dr. Bell's and Dr. Fast's opinions out-of-date or incomplete. Plaintiff has not established how the record was incomplete, ambiguous, or out-of-date such that the ALJ's duty to develop the record was triggered.[9]

The opinions of Drs. Bell and Fast were also consistent with other evidence in the medical record such as Plaintiff's MRI results and nerve conduction study, which the ALJ discussed. The opinion of a non-examining physician may serve as substantial evidence when it is consistent with other independent evidence in the record. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995); *see also Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) ("reports of the nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it").

Thus, Dr. Bell's and Dr. Fast's opinions constituted substantial evidence upon which the ALJ was entitled to rely.

---

[9] While not dispositive, Plaintiff's counsel's agreement to close the record at the time of the ALJ's hearing without seeking to hold the record open to obtain treating physician opinions or requesting that a compensation examination be obtained by the agency diminishes the persuasiveness of Plaintiff's argument on appeal that the record was not fully developed by the ALJ. (*See* AR 36.)

**B.     Appeal Council's Decision Not to Incorporate Some New Records Was Not Erroneous**

Plaintiff submitted additional documents to the Appeals Council in seeking review of the ALJ's decision. Plaintiff argues the Appeals Council erred by incorporating only some of these documents into the record. Plaintiff maintains the Appeals Council was required to incorporate *all* of the newly submitted evidence, even to the extent the Appeals Council found it immaterial to the relevant time period.

The Commissioner maintains the evidence not included by the Appeals Council related to a time period *after* the ALJ's January 24, 2012, decision. Pursuant to 20 C.F.R. § 416.1470(b), the Appeals Council will consider newly submitted evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision"; therefore, it was proper for the ALJ to return evidence that related to a later period. The Commissioner also contends the evidence Plaintiff submitted does not change the reasonableness of the ALJ's decision, even if it were included. Finally, the Commissioner contends Plaintiff was represented at the time of the ALJ decision and agreed that the record could be closed. (AR 36.) Plaintiff should not *now* be permitted to argue that newly submitted records – records dated *after* the ALJ's decision – invalidate the ALJ's decision.

The Ninth Circuit in *Brewes v. Commissioner of Soc. Sec. Adm.,* 682 F.3d 1157, 1162 (9th Cir. 2012), specifically held that Social Security regulations permit claimants to submit new and material evidence to the Appeals Council and "require the Council to consider that evidence in determining whether to review the ALJ's decision, *so long as the evidence relates to the period on or before the ALJ's decision.*" (Emphasis added.) The Ninth Circuit expressly cited and relied on 20 C.F.R. § 404.970(b) which provides:

> *If new and material evidence is submitted,* the Appeals Council shall consider the additional evidence *only* where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and *material* evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

12

(Emphasis added.)   The Ninth Circuit held that where the Appeals Council is required to review the new evidence, this new evidence must be treated as part of the administrative record. *Brewes,* 682 F.3d at 1162 (citing *Perez v. Chater,* 77 F.3d 41, 45 (2d Cir. 1996)).

The evidence Plaintiff contends was improperly excluded from the record by the Appeals Council is attached as exhibits to Plaintiff's opening brief, and include the following:

**A.**   **Exhibit A (Doc. 11-1)**
- November 5, 2012, progress notes from Dr. Ralph (Doc. 11-1, pp. 1-4);
- May 17, 2012, results of nerve conduction studies and progress/examination notes from Dr. Ralph (Doc. 11-1, pp. 5-8);
- November 14, 2011, letter from Dr. Ralph to Dr. Arellano and PA Dias (Doc. 11-1, pp 9-11); and
- September 12, 2011, letter from Dr. Ralph to Dr. Arellano and PA Dias (Doc. 11-1, pp. 12-14).

**B.**   **Exhibit B (Doc. 11-2)**:
- August 22, 2012, letter from Dr. Levin summarizing findings from an examination of Plaintiff on August 22, 2012 (Doc. 11-2, pp. 1-2);
- Three examination reports from Dr. Ralph:
    (1)   May 17, 2012 (Doc. 11-2, p. 3-4);
    (2)   November 14, 2011 (Doc. 11-2, pp. 5-6);
    (3)   September 12, 2011 (Doc. 11-2, pp. 7-9);
- Examination records from Dr. Levin:
    (1)   May 18, 2011 (Doc. 11-2, p. 10);
    (2)   March 1, 2011 (Doc. 11-2, pp. 11-13); and
    (3)   February 1, 2011 (Doc. 11-2, pp. 14-16).

The Appeals Council did, however, incorporate into the Administrative Record two exhibits (which included 3 separate documents) submitted by Plaintiff:  (1) Plaintiff's brief to the Appeals Council dated July 19, 2012 (AR 200-02); (2) a letter from Dr. Arellano dated September 26, 2012 (AR 368); (3) a Multiple Impairment Questionnaire from Dr. Ralph dated September 30, 2012 (AR 367-76).

The Appeals Council is not required to incorporate newly submitted documents into the Administrative Record simply because the claimant so requests. Rather, the Appeals Council is required only to incorporate newly submitted evidence that relates to the time period on or before the ALJ's decision. 20 C.F.R. §§ 416.1470(b), 416.1476(b). Here, the ALJ decision was issued on January 24, 2012. On Plaintiff's request for review of the ALJ decision, the Appeals Council noted it considered the records Plaintiff submitted, but it declined to include in the record those that related to a time *after* the ALJ's decision. (AR 2.) The November 5, 2012, progress note from Dr. Ralph as well as the May 17, 2012, nerve conduction study and progress note from Dr. Ralph (Doc. 11-1, pp. 1-8) all relate to Plaintiff's condition *after* the ALJ decision on January 24, 2012. This conclusion does not rest on the fact that the records were signed after the date of the ALJ's decision. Rather, these medical records relate to Plaintiff's condition on the date signed. Dr. Ralph's November 5, 2012, progress note is predicated on an examination taken that day, it notes findings made upon examination, and does not purport to be retrospective in nature. (Doc. 11-1, pp. 1-4.) The nerve conduction study performed on May 17, 2012, records Plaintiff's condition on that date. It does not contain any retrospective opinion about the degree of Plaintiff's condition prior to January 2012, other than to note Plaintiff's condition has worsened since her initial visit with Dr. Ralph in November 2011. (Doc. 11-1, p. 5.) These records were not material to Plaintiff's impairments during the relevant timeframe considered by the ALJ – between February 25, 2011, and January 24, 2012. As such, the Appeals Council was not required to incorporate those exhibits into the record.

The remaining documents Plaintiff attaches to her brief at Exhibit A include a letters from Dr. Ralph to Dr. Arellano and PA Dias dated November 14, 2011, and September 12, 2011. These letters, however, were *already* contained in the Administrative Record when Plaintiff presented them to the Appeals Council. There was therefore no need for the Appeals Council to incorporate these documents (*see* AR 339-41; 345-48). The Appeals Council did not err in refusing to include the documents Plaintiff now offers at Exhibit A to her opening brief.

Exhibit B to Plaintiff's brief includes a letter signed by Dr. Levin on August 22, 2012. This letter relates to his examination of Plaintiff on August 22, 2012, and her condition as of that

date. This record does *not* relate to a period on or before the ALJ's decision of January 24, 2012. Similar to the May and November 2012 records from Dr. Ralph, Dr. Levin's August 2012 letter relates to Plaintiff's functional abilities as of August 22, 2012. The letter does not offer a retrospective opinion regarding the degree or severity of Plaintiff's functional limitations prior to January 2012. While it may establish Plaintiff's condition is worsening, it does provide a functional assessment of Plaintiff's condition prior to the August 2012 examination. Exhibit B also includes the nerve conduction study performed in Dr. Ralph's office in May 2012, which was discussed above. Exhibit B also includes other treating notes from Dr. Levin (Doc. 11-2 pp. 5-16), but they are duplicative of what is already contained in the administrative record (*see* AR 280-86; 339-41; 345-48). The Appeals Council did not err in refusing to incorporate the documents Plaintiff offers at Exhibit B to her opening brief.

The only remaining question is whether the evidence incorporated into the record by the Appeals Council renders the ALJ's decision unsupported by substantial evidence. Evidence submitted to and considered by the Appeals Council is not new but rather is part of the administrative record properly before the district court. *Brewes*, 682 F.3d at 1164. The district court does "not have jurisdiction to review a decision of the Appeals Council denying a request for review of an ALJ decision, because the Appeals Council decision is a non-final agency action." *Id*. at 1161. When the Appeals Council denies review, "the ALJ's decision becomes the final decision of the Commissioner," and the "district court reviews that decision for substantial evidence, based on the record as a whole" which includes records the Appeals Council incorporated in denying review. *Id*.

The documents incorporated into the record by the Appeals Council include a September 26, 2012, letter from Dr. Arellano agreeing with PA Dias' assessment of Plaintiff's condition in December 2011. Dr. Arellano opines that Plaintiff's condition "is chronic, permanent and is usually progressive and disabling. The extent of her disability and the limitations to which she can participate in gainful employment is, however, beyond the scope of my practice." (AR 368.) Dr. Arellano's letter cites no additional clinical records or findings to support PA Dias' report.

Dr. Arellano's September 2012 letter does not undermine the ALJ's decision. The ALJ considered PA Dias' opinion, noting it was based only upon 2 examinations and was inconsistent with the record as a whole because there was little medical evidence to support the significant limitation to which PA Dias opined with respect to Plaintiff's ability to handle or finger objects. Further, although PA Dias opined that emotional conditions would further limit Plaintiff's functional capacity, the ALJ noted there was little medical evidence that Plaintiff had received treatment for or had been diagnosed with emotional factors that would affect her condition. Despite being an acceptable medical source (which the ALJ noted PA Dias was not), Dr. Arellano's agreement with PA Dias does not cure the deficits found by the ALJ in PA Dias' opinion – specifically that her assessment was not supported by clinical findings corroborating the extent of the limitations for handling and fingering or Plaintiff's emotional limitations. Dr. Arellano did not state whether he continued to treat Plaintiff since December 2011 or the frequency of any treatment since that time, and he offered no additional citation to records or findings to support PA Dias' assessment. Dr. Arellano's letter does not undercut the ALJ's discussion of PA Dias' December 2011 physical impairment limitation form.

Dr. Ralph's multiple impairment questionnaire states that his opinion is supported by the abnormal results of May 2012 nerve conduction studies showing a mild distal axonal polyneuropathy. (AR 369.) Thus, the support for his opinion is predicated on Plaintiff's condition after January 2012 and does not undercut the ALJ's finding of Plaintiff's functional abilities *on or before* January 2012. Moreover, the comment on the May 2012 nerve conduction testing results, to which Dr. Ralph refers, states the "results are essentially unchanged compared to the EMG/NCS results from February 1, 2011 (performed by Dr. Levin). (Doc. 11-1, p. 5.) Finally, Dr. Levin's treating notes as well as the February 2011 EMG/NCS results were considered by the ALJ.

Plaintiff argues the newest examination findings from Drs. Ralph and Levin relate to her foot, back, and upper extremity conditions since their examinations of her in 2011, which was well before the ALJ's decision. Plaintiff argues that Dr. Levin's functional assessment of August 22, 2012, directly undermines the ALJ's findings that Plaintiff can sit for six hours a day, stand and walk for two hours a day, and frequently handle and finger objects. In her reply brief, Plaintiff

reiterates that Dr. Levin's August 2012 opinion relates to Plaintiff's conditions since the time of his initial examination of her in February 2011.

Despite Plaintiff's assertion that these records are retrospective in nature and relate to Plaintiff's condition before January 2012, the records are predicated on each physician's most recent examination of Plaintiff and neither physician offers a retrospective opinion on Plaintiff's limitations as they existed prior to January 2012. Moreover, Dr. Levin notes Plaintiff's condition "has shown progression as for the most recent EMG, not uncommon in patients with diabetes, which can be a progressive illness causing herpetic symptomatology." (Doc. 11-2, p. 2.) The progressive nature of Plaintiff's condition further diminishes Plaintiff's argument that these records are representative of the degree of her limitations in the past. Dr. Levin does not indicate how much Plaintiff's condition has progressed since January 2012 or the degree of her limitations *before* January 2012. While Plaintiff argues the content of this report relates to the period before January 2012, there is nothing retrospective about the limitations to which Dr. Levin opined. Plaintiff does not demonstrate what information in either Dr. Levin or Dr. Ralph's most recent progress notes bears on the degree of her functional limitation prior to January 24, 2012.

Thus, the new evidence incorporated into the Administrative Record by the Appeals Council does not undercut the ALJ's reasoning, and the ALJ's decision remains supported by substantial evidence.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Commissioner of Social Security and against Plaintiff Debra Ann Giddings.

IT IS SO ORDERED.

   Dated:   **March 6, 2015**                                **/s/ Sheila K. Oberto**
                                                    UNITED STATES MAGISTRATE JUDGE